**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

WILLIAM GARRY, *et ux.*,                    *

       Plaintiffs,                          *

                        *

     vs.                                  *          Case No. 13-CV-03053-MJG

VIKING RIVER CRUISES, INC., *et al.,*        *

       Defendants.                           *

                        *

**DEFENDANTS' MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**

Viking River Cruises, Inc., by counsel, pursuant to Fed. R. Civ. P. 12 (b)(2) and this Court's Order of January 10, 2014, moves to dismiss the Amended Complaint as to it and as to Viking River Tours, Ltd., a new defendant, added in the Amended Complaint.

**MEMORANDUM OF POINTS AND AUTHORITY**
**IN SUPPORT OF MOTION TO DISMISS**

**STATEMENT OF THE CASE**

For the purpose of this 12(b)(2) Motion, defendant Viking River Cruises, Inc. (hereafter "Viking Inc. - USA"), assumes that William Garry fell while boarding the Swiss flag Motor Vessel VIKING LEGEND in Melk, Austria, while on a cruise from Budapest, Hungary, to Passau, Germany.   Original Complaint, paragraphs 4-7.   Viking Inc. – USA, neither owns, charters, operates nor manages the Motor Vessel VIKING LEGEND.  Hugh Affidavit, paragraph 6, Exhibit A to this Motion.  The vessel is a river cruise ship which has never called at a United States port, plies exclusively the waters of Central and Western Europe, and is incapable of crossing the Atlantic Ocean.

Plaintiffs sued Viking Inc. – USA in October, 2013, serving the defendant at its principal place of business in California.  After this Court dismissed the Complaint for a failure to allege facts warranting personal jurisdiction, plaintiffs were granted leave to amend the Complaint and attempt to cure these defects.  Order of January 10, 2014, ECF No. 18.  Although the Order only called for plaintiffs to explain why this Court can exercise jurisdiction over Viking Inc. – USA, plaintiffs have added another defendant, Viking River Tours, Ltd., of Hamilton, Bermuda ("Viking Ltd. – Bermuda"), which also neither owns, manages, nor operates the VIKING LEGEND.  Affidavit of Tine Hester, paragraph 4, Exhibit B.  As of this writing, undersigned counsel does not believe valid service of process has been effected on the Bermuda corporation.[1] However, because plaintiffs may effect service in Bermuda, it is believed to be efficient for the Court and counsel to address this Court's lack of jurisdiction over the Bermuda corporation in this paper.

Until it is clear which, if any, corporation is subject to jurisdiction in Maryland, undersigned counsel believe it more efficient and less confusing to defer motion(s) pursuant to Fed. R. Civ. P. 12(b)(6), or for summary judgment.  ECF No. 18, fn.2.

## BACKGROUND

There is nothing inherently unfair in requiring a person choosing to participate in a pleasure cruise solely traversing a river in Europe to sue in Europe for alleged injury in Austria. This is particularly true where (a) the terms of the contract of carriage are repeatedly brought to the attention of the traveler (including publication to the world on the Viking Website) and (b) the travelers have previously sailed on at least one other Viking cruise, with virtually identical terms and conditions, published and applicable.  The fact that plaintiffs may have failed to read

---

[1] Undersigned counsel is not authorized to accept service of process.  ECF No. 24.  Delivering the pleading to the Secretary of State (ECF No. 23) is not sufficient process for a foreign corporation under Fed. R. Civ. P. 4(h) or Maryland Rule 2-124.

the relevant terms, which are referred to in every document provided to the plaintiffs, and are in "all caps" in the materials provided, is not the point of this paper.  But should the Court conclude that it has jurisdiction, plaintiffs will be hard pressed to explain (a) how a California corporation, the agent for a disclosed principal (neither of which has any vessel operational duties at all) is liable for a wet gangway in Austria and (b) why they are not bound by clear forum selection clauses, pursuant to *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95, 111 S.Ct. 1522 (1991).

## STATEMENT OF FACTS

The attached affidavits of Milton Hugh, Senior Vice-President of Viking Inc. – USA, and Tine Hester, a Director of Viking Ltd. – Bermuda, make clear that Viking Inc. – USA, serves as an agent for the disclosed principal, a European[2] tour operator, which in turn contracts with other European entities that provide ship, guide, van, hotel and other services in Europe.  Viking Inc. – USA does not have a physical presence in Maryland, is not domiciled in Maryland, employs no Maryland residents, or otherwise acts as other than travel agent and marketer for its owner, Viking River Cruises (Bermuda).  Hugh Affidavit, paragraphs 3-6.  Viking River Cruises (Bermuda) Ltd. has not been named in the Amended Complaint

Viking Ltd. – Bermuda, has no Maryland presence whatsoever.  As set out in the affidavit of Tine Hester, Exhibit B, its activities, assets and employees are primarily in Europe, where it hires the vessels, tour guides, hotels, and so on, which are part of  the European tour packages.

---

[2] Other Viking entities, identified in the relevant publications, provide services in Asia.

## ARGUMENT

### A.      This Court Lacks Personal Jurisdiction Over
### Viking Inc. – USA and Over Viking Ltd. - Bermuda

Despite specific instructions from the Court, the Amended Complaint at paragraphs Nos. 2-6, ECF No. 19, contains the same inadequate allegations as to personal jurisdiction that were found lacking in the original Complaint.   Plaintiffs continue to confuse subject matter jurisdiction with personal jurisdiction.  The Amended Complaint fails on both counts.  Although the Amended Complaint alleges that the parties are diverse, no amount of damages is alleged or claimed and thus 28 U.S.C. § 1332 is not satisfied.  It is also doubtful that 28 U.S.C. § 1333, Admiralty and Maritime Claims, applies to a tort alleged to have occurred on a Swiss flag vessel in Austria.

While plaintiffs allege in their "statement" certain activities they claim amount to doing business within this jurisdiction, there is no allegation connecting the wet gangway in Austria with Maryland, or with defendant Viking Inc. – USA.  That California corporation did not and does not own the VIKING LEGEND.  No action of Viking Inc. – USA related to the tort is alleged to have occurred, or could have occurred, in Maryland.  The Amended Complaint is even more vacuous as to the Bermuda corporation headquartered in Basel, Switzerland.  Plaintiffs supply no case-law or argument to the effect that a brand name used worldwide renders any party associated with that name subject to suit in any jurisdiction.  This is one of the essential lessons of *Goodyear Dunlop Tire Operations*, *S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846 (2011) ("*Goodyear*").  The fact that Goodyear tires were sold in the forum state did not mean that Goodyear's foreign subsidiary, allegedly causing an accident in France, was subject to jurisdiction in North Carolina.  The same principle should govern here.  Plaintiffs allege no contact  constitutionally  sufficient  to  warrant  this  Court's  exercising  special  or  general

jurisdiction over corporations owned, operated and managed outside Maryland.  This lack of contact with the forum jurisdiction renders it incompatible with due process, and thus unconstitutional, for this Court to exercise personal jurisdiction over Viking Inc. – USA or Viking Ltd. – Bermuda.

**B.  Plaintiff Has The Burden Of Establishing Personal Jurisdiction**

While this Court must "construe all relevant pleading allegations in the light most favorable to plaintiffs," plaintiff "has the burden of alleging and proving facts justifying the exercise of personal jurisdiction."  *Sony Chemicals Europe B. V. v. M/V INGRITA*, 1995 WL 846692, at *2 (D. Md. 1995), *quoting from Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).  We stress that plaintiffs must allege facts, not spin legal theories.  The only facts relevant to jurisdiction alleged are that defendants are not residents of Maryland and that the accident occurred in Austria.  Even plaintiffs do not suggest that either defendant could have known of or done anything about the wet gangway or that either defendant had any control over the crew of the VIKING LEGEND.  Vessel charterers, and sub-charterers, are not liable for the actions of the vessel's crew.  *Lawrence v. Yacht IMAGINE…!*, 333 F. Supp. 2d 379 (D. Md. 2004).

**C.  Plaintiff Has Failed To Establish A Basis For The Court's Exercise of Personal Jurisdiction Over Defendants Under Maryland Law**

This Court is authorized to exercise personal jurisdiction over defendants only to the extent permissible under the laws of Maryland.  *Sony Chemicals, supra,* 1995 WL 846692, at *2, citing cases.  Plaintiffs maintain that this is a maritime matter.  Amended Complaint para. 6.a., ECF No. 19.  Even assuming this to be true,[3] Congress has not authorized nation-wide service of process in such matters.  *Fed. Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 657, n.2 (4th Cir.

---

[3] *Roberts v. U.S.*, 498 F.2d 520, 524 n. 7 (9th Cir. 1974).

1989).  A federal court must apply the state long-arm statute even when the cause of action is purely federal.  *Graphic Controls Corp. v. Utah Medical Products*, 149 F.3d 1382, 1385-86 (Fed. Cir. 1998); *Fed. Ins. Co.*, *supra*, 886 F.2d at 657.  A federal court sitting in Maryland has the power to exercise personal jurisdiction over a party only if the party is subject to either (1) specific jurisdiction, where the cause of action arises out of the conduct which constitutes the party's contact with Maryland; or (2) general jurisdiction, where a party's contact with Maryland "must be continuous and systematic."  *CSR, Limited v. Taylor*, 411 Md. 457, 478 (2009), *citing, inter alia, Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868 (1984).  This distinction is recently reaffirmed by the Supreme Court:

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.  *See International Shoe*, 326 U.S., at 317, 66 S.Ct. 154.  Specific jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Goodyear,* 131 S.Ct. 2846 at 2851.

Due process protects individual defendants from being bound *in personam* by judgments of a forum with which they lack meaningful relations, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S.Ct. 2174 (1985), and requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569 (1977) (Stewart, J., concurring in the judgment).  The "fair warning" requirement affords a degree of predictability to the legal system and permits potential defendants to structure their conduct "with some minimum assurance as to where that conduct will and will not render them liable to suit."  *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980). *See also Burger King*, 471 U.S. at 472, 105 S.Ct. at 2181; *Fed. Ins. Co.*, *supra,* 886 F.2d at 657-58.

If a party's contacts with Maryland are sufficient only to give rise to specific jurisdiction, the party is subject to personal jurisdiction in Maryland only for a cause of action that arises out of the contacts the defendant had with the forum. *Goodyear,* 131 S.Ct. at 2852. If a party's contacts with Maryland are sufficient to give rise to general jurisdiction, the party may be subject to personal jurisdiction for any cause of action. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868 (1984). Unlike specific jurisdiction, where one isolated contact may be sufficient, the contacts required for general jurisdiction must be "continuous" in nature. *Id.* When, as here, a plaintiff's injury does not arise out of direct (or any) contact with the forum State, then other contacts between defendant and the State of Maryland must be "fairly extensive" in order to avoid offending notions of "fair play and substantial justice." *Goodyear, supra*, 131 S.Ct. at 2853.

In a challenge to any exercise of personal jurisdiction, the court must first consider whether a state's "long-arm" statute expressly authorizes the exercise of jurisdiction. If statutory "long-arm" authority is found, then it must be determined whether the exercise of that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132, 134 (4th Cir 1996) (no personal jurisdiction in Maryland over New York private investigation firm whose only contacts with Maryland were telephone calls to and hiring of local companies for information on Maryland residents); *see also Talegen Corp. v. Signet Leasing & Financial Corp.*, 104 Md. App. 663, 669 (1995) (defendant not subject to specific or general jurisdiction in Maryland when its contacts with the state, consisting of mailing rent payments to Maryland, were the result of the "unilateral act of a non-party," *i.e.*,

the assignment of the master lease to a Maryland company).  The fact that plaintiffs apparently reside in Maryland is the equivalent of their "unilateral act" and is in no way connected to actions of Viking Inc. – USA, Viking Ltd. - Bermuda or an accident aboard another entity's vessel in Austria, allegedly caused by the negligence of a non-party.  "Broad constructions of general jurisdiction should be generally disfavored." *Hardnett v. Duquesne Univ.,* 897 F. Supp. 920, 922 (quoting *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993)).  This narrow construction of general jurisdiction is a consequence of the tremendous expansion of specific jurisdiction, which plaintiffs cannot allege.  *See Carey v. Fiberfloat Corp.*, 849 F. Supp. 423 at 426 (D. Md. 1994) (quoting *Nichols*, *supra*, 991 F.2d at 1200).  Plaintiffs cannot rely upon revenue alone to draw either defendant into Maryland.  Even were ten percent of the defendants' worldwide earnings derived from Maryland, which is not asserted, this would not tip the scales. *Carey v. Fiberfloat Corp.*, *supra*, 849 F. Supp. at 2128.  Even if plaintiffs established that the defendants had a sales representative stationed in Maryland, this could not suffice for the purpose of general jurisdiction.  *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1198 (4th Cir. 1993).  *See also*, *Glynn v. Edo Corp.*, *supra*, 536 F. Supp. 2d. at 607, n.16 (some revenue generation does not justify exercise of general jurisdiction).

The Maryland legislature intended Maryland's long-arm statute "to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment." *Stover*, 84 F.3d at 135 (*citing Camelback Ski Corp. v. Behning*, 307 Md. 270, 273 (1986)).  The exercise of personal jurisdiction over non-resident entities is governed by the Maryland Long-Arm Statute, which, in relevant part, provides:

**Cause Of Action Arising From Conduct In State Or Tortious Injury Outside State.**

(a)      *Condition*.  If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b)   *In general*.   A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1)   Transacts any business or performs any character of work or service in the State;

(2)   Contracts to supply goods, food, services, or manufactured products in the State;

(3)   Causes tortious injury in the State by an act or omission in the State;

(4)   Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5)   Has an interest in, uses, or possesses real property in the State; ….

Md. Cts. & Jud. Proc. Code Ann. § 6-103 (2006).

Even if a case appears initially to fall within one of these subsections, the inquiry is not yet complete.   As this Court has often recognized, application of this statute to the facts of a particular case requires a two-step analysis.   First, the Court must determine whether exercise of jurisdiction over the defendant is authorized by subsection (b) of the statute.   Second, even if the terms of the Statute are satisfied, the Court must look to *federal* law to determine whether exercise of jurisdiction over the defendant comports with due process.   *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985).

### D.   The Requirements Of Subsections (b)(2), (b)(3) And (b)(5) Are Not Satisfied.

As an initial matter, it is clear that subsections (b)(2), (b)(3) and (b)(5) of Maryland's Long-Arm Statute have no application to the claim against Viking Inc. – USA or Viking Ltd. – Bermuda.   Following Maryland case-law, this Court has read subsection (b)(2) narrowly, confirming that it applies only to actions arising out of contract.   *United Merchants & Mfgrs. v.*

*David & Dash Inc.*, 439 F. Supp. 1078, 1082 (D. Md. 1977).  Thus, because plaintiffs' allegation of damage relates solely to a tort occurring in Austria, (b)(2) is not applicable.  Plaintiffs do not allege that Viking Inc. – USA had any duties other than as an agent for a disclosed principal, and those duties, such as they were, have been carried out properly.  That is, bookings consistent with plaintiffs' requests were made, accurate travel tickets provided, and so on.  The California company had no connection with the vessel.  Similarly, there is no allegation that Viking Ltd. – Bermuda breached a contract with the Garrys, in that it too acts in Switzerland, to package Viking tours, Hester Affidavit, paragraphs 3 and 4.  There is no allegation that the vessel ever called (or even could call) at the Port of Baltimore.  And even if it had, "the mere fact that a vessel makes numerous port calls in a particular state does not, in itself, demonstrate contacts sufficient for exercising general personal jurisdiction."  *Gemini Navigation S.A. (Liberia) Limitation Proceedings*, 1996 WL 544236 (S.D. Tex. 1996); *accord*, *Asarco, Inc. v. Glenarm, Ltd.,* 912 F.2d 784 (5th Cir. 1990); *Nicolaisen v. Toei Shipping Co.*, 722 F. Supp. 1162 (D. N.J. 1989).  Even were the VIKING LEGEND to have called at Baltimore (<u>and</u> Viking Inc. - USA or Viking Ltd. – Bermuda were the owner or operator), this would not warrant the exercise of personal jurisdiction.  *CSR, Ltd. v. Taylor*, 411 Md. 457 (2009) (shipping of asbestos cargo through Port of Baltimore does not amount to significant activity or purposeful availment).

### E.    The Requirements Of Neither<br>Subsections (b)(1) Nor (b)(4) Are Satisfied

It is well settled that if jurisdiction is premised on the "transacting business" test of subsection (b)(1), the plaintiff's cause of action must "arise from" the nonresident defendant's contacts with Maryland.  *Catalana v. Carnival Cruise Lines, Inc.*, 618 F. Supp. 18, 21 (D. Md. 1984), *aff'd*, 806 F.2d 257 (4th Cir. 1986).  Plaintiff does not and cannot contend that his injury "arises from" either defendant's contacts with Maryland.  "Because the plaintiffs' cause of action

did not arise from the Baltimore cruises [of defendant Carnival], the Baltimore cruises may not support a finding of personal jurisdiction under subsection (b)(1)."  *Id.*  As in *Catalana v. Carnival Cruise Lines*, plaintiffs here claim that the package purchased through their Baltimore travel agent, working with Viking Inc. – USA, renders Viking Inc. – USA subject to jurisdiction. Because plaintiffs do not claim that either the local travel agent, or the airline which flew them from Virginia's Dulles Airport to Hungary, was as an agent of Viking Inc. – USA or Viking Ltd. – Bermuda, there are no acts in Maryland which should be attributed to Viking Inc. – USA. Plaintiffs claim that the injury was caused by employees or agents of an unnamed entity in Austria.  Complaint, paragraph 72.  Viking Inc. – USA and Viking Ltd. – Bermuda deny that any of their employees or persons for whom they might conceivably be held accountable were present on the ship in Austria.  This leaves subsection (b)(4) as the only basis for jurisdiction. And subsection (b)(4) requires more than minimum contacts with Maryland, in that subsection (b)(4) requires that any "course of conduct" must be "persistent" or any revenue derived contacts from service provided in Maryland be "substantial."

Courts addressing subsection (b)(4) in the maritime context have reached conclusions consistent with *Goodyear, Helicopteros* and the several other decisions subsequent to *International Shoe*.  Forty years ago, the late Judge Kaufman dealt with the then new section (b)(4).

> In *Ratliff v. Cooper Laboratories*, 444 F.2d 745, 748 (4th Cir.), *cert. denied*, 404 U.S. 948. . . .  Judge Craven wrote:  "If 'plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be *fairly extensive* before the burden of defending a suit therein may be imposed upon it without offending "traditional notions of fair play and substantial justice.'"

*Egeria, Societa di Navigazione per Azioni v. Orinoco Mining Co.*, 360 F. Supp. 997, 1004 (D. Md. 1973) (further citation omitted).  In an analogous case, the Motor Vessel SANTA CLARA I

suffered a pollution casualty in the Port of Baltimore.  The United States filed suit in Charleston.  Although the South Carolina long-arm statute does not mirror Maryland's exactly, the requirements of a persistent course of conduct or the derivation of substantial revenue in order for subsection (b)(4) to apply are the same.  *United States v. M/V SANTA CLARA I*, 859 F. Supp. 980, 984 (D.S.C. 1994).  *See also Atlantic Mutual Insurance Co., Inc. v. CSX EXPEDITION*, 2002 WL 202195, *2 (S.D.N.Y. 2002) ("defendant's presence must be more than occasional or casual").

The Statement of Facts set forth above, supported by the Hugh and Hester Affidavits, establishes that the exercise of jurisdiction over Viking Inc. - USA or Viking Ltd. – Bermuda would be inconsistent with the requirements of the Maryland Long-Arm Statute.  Thus, the plaintiffs fail to satisfy the first prong of the jurisdictional test.  Nevertheless, even if there were some basis to conclude that the plaintiffs possibly satisfied subsection (b)(4), the application of the Maryland Long-Arm statute as to either defendant would be a violation of the constitutional right to due process.  This Motion should therefore be granted, and the Amended Complaint dismissed.

"In Maryland, as in many other states, at least portions of the state's long-arm statute are intended to be coterminous with the reach of the Due Process Clause of the Fourteenth Amendment."  *Autoscribe Corporation v. Goldman and Steinberg,* d/b/a *Intell-A-Check, et al*., 33 U.S.P.Q. 2d 1758, 1767 (4th Cir. 1995) (*citing Camelback*, *supra*, 307 Md. at 272).  Accordingly, the Court of Appeals for the Fourth Circuit has suggested that the two-part, statutory-constitutional analysis is no longer necessary.  *Stover v. O'Connell Assoc., Inc.,* 84 F.3d 132, 135-136 (4th Cir. 1996); *see also Ciena Corp. v. Jarrard,* 203 F.3d 312, 317 (4th Cir. 2000): "[T]he statutory inquiry necessarily merges with the constitutional inquiry and the two

inquiries essentially become one." *Id.* (*quoting Stover*, 84 F.3d at 135-36); *accord, Yakovets v. Bailin*, 2014 WL 279697 (D. Md. 2014).

### F.        Constitutional Analysis

Even if Maryland's Long-Arm statute purported to confer jurisdiction over either defendant, the assertion of that jurisdiction still must be consistent with constitutional due process. *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Where there is no physical presence within the sovereign territory of the state, *Pennoyer v. Neff*, 95 U.S. 714, 1877 WL 18188 (1877), the party defendant must conduct some meaningful activity there. The defendant's activity in the forum state may serve as an "analog for presence" only if such activity creates the necessary "minimum contacts with the state." *Stover*, 84 F.3d at 136.

The critical inquiry, therefore, is whether Viking Inc. – USA and Viking Ltd. – Bermuda conducted any activities in Maryland, which constituted sufficient "minimum contacts with [Maryland] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ciena*, 203 F.3d at 317 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958), the Supreme Court clarified that the "minimum contacts" necessary for personal jurisdiction were established only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State."

Due Process Clause limits imposed on Maryland's long-arm statute were explained in *Poole & Kent Co. v. Equilease Assoc. I*, 71 Md. App. 9 (1987). In that case, the Court of Special Appeals affirmed the lower court's dismissal for lack of personal jurisdiction even though the defendant had some contacts with Maryland that may have fallen within the ambit the Maryland

Long-Arm statute.  *Id*. at 21.  In discussing the constitutional limits on Maryland's Long-Arm statute, the court explained that:

1.  The defendant must have certain minimum contacts with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice";

2.  It is essential that there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws;

3.  When a claim does not arise out of or does not relate to the defendant's contacts with the forum state, those contacts must be fairly extensive before personal jurisdiction will be imposed without violating due process.

*Id*. at 20-21 (citations omitted).

Plaintiff does not allege, and cannot allege, that any of the events giving rise to the Amended Complaint occurred in Maryland (or any other of the United States).  Nor has Viking Inc. – USA or Viking Ltd. – Bermuda "purposefully availed" itself of the privilege of conducting activities in Maryland that would subject it to being brought into a Maryland court.  Under *International Shoe*, any exercise of personal jurisdiction over either defendant in Maryland would offend "traditional notions of fair play and substantial justice."  *See Int'l Shoe*, 326, U.S. at 316, 66 S.Ct. at 158.

In *Goodyear* the Supreme Court held that the North Carolina courts did not have general jurisdiction over the non-resident defendants because plaintiffs had failed to show that the entities' contacts with North Carolina were sufficient to make the entities "at home" in North Carolina:

For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.

*Id.* at 2853-54 (citing Brilmayer *et al*., A General Look at General Jurisdiction, 66 Texas L. Rev. 723, 728 (1988) ("identifying **domicile, place of incorporation**, and **principal place of business** as 'paradig[m] bases for exercise of general jurisdiction'") (emphasis added).  Plaintiffs do not allege that any of these paradigm bases is in Maryland, as to either corporation.

### G.      There Is No General Jurisdiction In This Court

In the event an action may not be brought as a result of a defendant's specific activities in the forum state, the plaintiff must satisfy the significantly higher general jurisdiction hurdle.  For the court to find general jurisdiction, the requisite minimum contacts between the defendant and the forum state must be "fairly extensive."  *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971).  "[C]onduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]."  *International Shoe*, 326 U.S. at 317, 66 S.Ct. 159.  Even "continuous activity of some sorts within a State is not enough to support [general jurisdiction]."  *Id*. at 318.  Only when the "continuous corporate operation within a state [is] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant.  *Id.*

When the cause of action does not arise out of or relate to the defendant's activities in the forum state, due process will be offended by the exercise of *in personam* jurisdiction unless the defendant's contacts with the state can be characterized as "continuous and systematic." *Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1873 (purchases of equipment from forum state not sufficient to support general jurisdiction because "mere purchases, even if occurring at regular intervals, are not enough … in a cause of action not related to the purchases").  What plaintiffs refuse to admit is that there is no allegation that the California company or the Bermuda/Swiss

company breached a contract or committed the tort allegedly occurring in Austria.  Viking Inc. - USA marketed the Viking tours and collected the airfare and cruise fare from the plaintiffs' travel agent (Inner Harbor Travel), and passed on the information to Viking entities outside the United States.  Plaintiffs do not contend that the California defendant absconded with their funds, erred in making arrangements or lost paperwork.  This is significant for two reasons.  First, it raises the general jurisdiction bar.[4]  Second, even were this Court to find personal jurisdiction, it is not disputed that neither Viking Inc. – USA nor Viking Ltd. – Bermuda owned, operated, controlled or managed the vessel herself *or* owned or controlled the vessels' owner, the Swiss corporation Viking River Cruises AG.  Hugh Affidavit, paragraph 3.  Leaving aside the explicit disclosures in the contracts, there is no reason any traveler would think the owner of a vessel plying exclusively the rivers of Europe would itself be owned by a Maryland company or be subject to suit in Maryland.

### H.      Plaintiffs' Allegations As To The Forum Selection Clause Confirm The Lack Of Personal Jurisdiction

Were this case to continue, Viking Inc. – USA will establish that plaintiffs or their agent were supplied with several writings prior to the trip at issue, and prior to their earlier Viking trip, which clearly and unequivocally called for California jurisdiction of any claim against Viking Inc. – USA.  Plaintiffs were also provided, for both cruises, with instructions for making a claim against the owner and operator of the vessels.  Such clause(s) have been accepted parts of the cruise passenger trade for a generation.  *Carnival Cruise Lines, Inc. v. Shute*, 409 U.S. 585, 111 S. Ct. 1522 (1991).  That plaintiffs either failed to read, or ignored, these parts of their

---

[4] *Goodyear*, 131 S. Ct. at 2856, *Helicopteros*, 466 U.S. 408.

agreements is simply not the point at this juncture.  Plaintiffs will face this next hurdle if jurisdiction as to either defendant is found.[5]

## I.   Plaintiffs' New Allegations Fail To Overcome The Fundamental Disconnect Between This State And The Accident In Austria

Plaintiffs' allegations as to Viking Ltd. – Bermuda are all completely false.  Affidavit of Tine Hester, Exhibit B.  Although the plaintiffs have been litigating this matter for four months, they have not provided a single document or asserted a single specific fact supporting their allegations.

As to Viking Inc. – USA, the affidavit of Mr. Hugh, Exhibit A, establishes a limited marketing-only presence which does not warrant this Court exercising personal jurisdiction.  For example, the plaintiffs' citation to *Catalana v. Carnival Cruise Lines, supra*, 618 F. Supp. at 22, proves the point of Viking Inc. – USA.  Carnival used the Port of Baltimore for regularly scheduled cruises.  It is clear Judge Miller would have decided the jurisdiction issue differently had Carnival never sent a ship to Baltimore.

The allegation that some fraudulent inducement occurred in Maryland is absurd.  The idea that the California company was operating a passenger ship in Hungary, Austria and Germany has no foundation in fact or reasonable expectation.  *Both* plaintiffs' earlier French trip and the Central European booking, and each of several bills thereafter, received by plaintiffs, one for the trip through France and the second, for the trip through Central Europe, contained the following:

> For details on terms & conditions regarding your reservation refer to the reverse side of this invoice.  If received by fax or email, refer to the additional attachment.

---

[5] Yet another hurdle is that plaintiffs still have sued the wrong parties.  A charterer is not liable for negligent employees of others over which it has no control. *Lawrence v. Yacht IMAGINE…!, supra*, 333 F.Supp. 2d at 384-86.  Suing the wrong sister company or subsidiary is fatal to plaintiffs' claim. *Membreno v. Costa Crociere, S.p.A.*, 347 F. Supp. 2d 1289 (S.D.Fl. 2004).

By submitting payment of all or part of this booking, you acknowledge that you have read and understand the terms, conditions, and cancellation penalties associated with your itinerary.

---

IMPORTANT INFORMATION; THIS WILL CONFIRM YOUR PURCHASE OF A VIKING CRUISE.  PLEASE READ THE TERMS AND CONDITIONS OF THIS LEGALLY BINDING CONTRACT BETWEEN YOU AND VIKING RIVER CRUISES, INC. DBA VIKING CRUISES.  THIS CONTRACT CONTAINS SUBSTANTIAL PENALTIES FOR CANCELLATION, AS WELL AS SPECIFIC LIMITATIONS OF LIABILITY; PLEASE REVIEW THIS CONTRACT CAREFULLY, SO THAT YOU UNDERSTAND BOTH YOUR AND OUR RIGHTS AND RESPONSIBILITIES.

---

**General Conditions**:  THIS CONTRACT IS SOLELY BETWEEN YOU (THE GUEST ON A VIKING CRUISE) AND VIKING CRUISES ("VIKING"), WHICH ACTS SOLELY AS A SALES AGENT FOR THE OWNERS AND OPERATORS OF THE SHIPS DESCRIBED IN THE VIKING CRUISES BROCHURES, WEBSITE OR ANY OTHER PROMOTIONAL MATERIAL ("VIKING ADVERTISING") AND FOR ALL TRAVEL SERVICES, INCLUDING LAND, AIR AND WATER TRANSPORTATION, ACCOMMODATIONS AND EXCURSIONS WHICH COMPRISE A VIKING CRUISE, ALL OF WHICH ARE PURCHASED FROM THIRD-PARTY PROVIDERS UNRELATED TO VIKING, WHICH NEITHER OWNS NOR OPERATES ANY VESSELS OR OTHER MEANS OF TRANSPORTATION, ACCOMMODATIONS OR OTHER TRAVEL OR LEISURE FACILITIES. VIKING ASSUMES NO RESPONSIBILITY OR LIABILITY FOR ACTS OR OMISSIONS OF THOSE PERSONS PROVIDING TRAVEL SERVICES, ACCOMMODATIONS OR ANY OTHER ELEMENT OF A VIKING CRUISE. YOU AGREE THAT PASSAGE ON ANY VESSEL UPON WHICH VIKING IS ACTING SOLELY AS A SALES AGENT IS GOVERNED BY AND SUBJECT TO THE TERMS AND CONDITIONS OF THE PASSENGER TICKET CONTRACT ISSUED TO YOU WHICH LIMITS YOUR RIGHTS AND SETS FORTH LIMITATIONS WITHIN WHICH CLAIMS MAY BE MADE AND/OR SUITS MAY BE FILED AGAINST A PARTICULAR VESSEL, ITS OWNERS, OPERATORS AND VARIOUS OTHER THIRD-PARTY PROVIDERS.  YOU FURTHER AGREE THAT YOUR RIGHTS AS A GUEST OF VIKING CRUISES ARE GOVERNED SOLELY BY SEPARATE CONTRACTS BETWEEN YOU AND ALL THIRD-PARTY PROVIDERS FORMING COMPONENT PARTS OF EACH VIKING CRUISE.   THE PRINCIPAL SEPARATE AGREEMENTS TO WHICH YOU ARE SUBJECT ARE AVAILABLE ONLINE AT WWW.VIKINGCRUISE.COM.  SPECIFICALLY, IN MAKING A CRUISE FARE DEPOSIT OR ANY FORM OF APPROVED PAYMENT AS SHOWN ON THE INVOICE FORMING A PART OF THIS BINDING CONTRACT, YOU AGREE TO BE BOUND BY ALL PROVISIONS

CONTAINED IN THE APPLICABLE AGREEMENTS COMPRISING YOUR VIKING CRUISE, INCLUDING SPECIFICALLY THOSE PROVISIONS RELATING TO VENUE, JURISDICTION, GOVERNING LAW AND DISPUTE RESOLUTION AS WELL AS LIMITATIONS OF LIABILITY.

**Dispute Resolution**:  This Contract is governed by the laws of the State of California, exclusive of conflicts of law provisions.  All disputes relating to this Contract directly or indirectly shall be litigated if at all in and before any court of competent jurisdiction located in Los Angeles County, California, USA, to the exclusion of the courts of any other jurisdiction and you agree to be bound by and submit to the governing law, venue and jurisdiction stated in this Contract.

**Deposit Policy**:  A cruise fare deposit of US $500.00 per person is required to secure a confirmed reservation.  The deposit applies to the cruise fare portion only and does not apply to air purchased.  Air seats are limited; airfares are subject to change and are not guaranteed until full payment of air is received.  When more than one cruise is booked, deposit and payment policies apply per cruise fare.  The final balance is due no later than 90 days prior to departure.  Promotions may have different payment terms.  Please refer to the offer as specified on the invoice. All reservations are subject to cancellation and/or cancellation charges if payment are not received by the due date.

See affidavit of Milton Hugh, paragraph 5.   While this evidence relates more directly to a possible Motion to Dismiss or for Summary Judgment premised on the choice of forum clause, the suggestion that Viking advertising was a fraud or that there was a conspiracy, is a desperate attempt to fabricate jurisdiction where there is none.   Similarly, the Viking website, which plaintiffs were invited to peruse more than fifteen times, details the obligations of the vessel owner and all the providers of service.  As noted above, choice of forum clauses are the industry norm.  This is the antitheses of bait and switch.  The contrast with the cases cited by plaintiffs – where a service or product was to be provided in Maryland – is striking.  The language in the papers supplied to plaintiffs is quite similar to that discussed many other cruise ship and cruise agent cases, such as *Shute v. Carnival Cruise Lines, Inc.*, 897 F.2d 377 (9th Cir. 1990), *reversed* at 499 U.S. 585, 111 S. Ct. 1522 (1991).  What plaintiffs fail to apprehend, or refuse to admit, is that neither Viking Inc. – USA nor Viking Ltd. – Bermuda was the party owning or operating the

VIKING LEGEND or controlling the crew at the head of her gangway.  Hence their discussion of "foreign torts" and personal jurisdiction over the alleged tortfeasors is irrelevant to this Court's personal jurisdiction over companies not perpetrating any wrong.

Plaintiffs' citation to *Carter v. Trafalgar Tours, Ltd.*, 704 F. Supp. 673 (W.D. Va. 1989), proves this point.  There the plaintiffs sued the offending party, the English employer (or principal) of the negligent bus driver.  While defendants question whether *Carter* remains good law after *Shute* and *Goodyear*, the undeniable disqualifying fact remains that Ms. Carter sued the correct party.  The Garrys still have not, perhaps because of the clear choice of forum clause in the booking contract and passenger ticket contract, which they were free to reject before *both* cruises.

The Booking Contract clearly states that the Bermuda company is not the Owner, Operator or Manager of the vessel.  See Ex. 1 to the Hugh Affidavit.  This contract has a clear forum selection clause, identical with what the Garrys had accepted (or ignored) on their prior Viking trip.  It is not the subject of this Motion however, in that plaintiffs fail to meet the personal jurisdiction threshold.

Courts have consistently required higher standards in order to subject a non-resident defendant to personal jurisdiction in a state for claims entirely unrelated to the defendant's activities in the forum.  *See, e.g., Helicopteros*, 466 U.S. 408, 104 S.Ct. 1868; *Camelback*, 307 Md. 270; *G.D. Searle*, 991 F.2d 1195.  The contacts between the defendant and the state must be "fairly extensive" in order to avoid offending notions of "fair play and substantial justice." *Camelback*, 307 Md. at 279.  "A corporation's 'continuous activity of some sorts within a state … is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear*, 131 S. Ct at 2856, quoting from *International Shoe*, 326 U.S. at 318,

66 S.Ct. at 159.   Quoting from *Helicopteros,* the *Goodyear* Court "concluded that mere purchases [made in the forum State], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."  *Goodyear*, (quoting from *Helicopteros*, 131 S.Ct. at 2856).

**CONCLUSION**

For the reasons stated above, and the allegations in the Amended Complaint, and the Affidavits of Mr. Hugh and Ms. Hester, the Amended Complaint as to both the California and Bermuda corporations should be dismissed for lack of personal jurisdiction.


Respectfully submitted,


_____/s/_____
Geoffrey S. Tobias
Trial Bar No. 301
Jack R. Daley
Trial Bar No. 29187
Ober, Kaler, Grimes & Shriver,
a Professional Corporation
100 Light Street
Baltimore, Maryland 21202
(410) 685-1120 – phone
(410) 547-0699 – facsimile